United States District Court
Southern District of Texas

**ENTERED**

July 07, 2016

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CRAIG DAVIDSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:15-cv-00756 |
| | § | |
| FMC TECHNOLOGIES, INC. | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON MOTION FOR SUMMARY JUDGMENT

This matter was referred by United States District Judge Vanessa Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #8). In this case, Plaintiff Craig Davidson ("Plaintiff," "Davidson") brings claims against his former employer, Defendant FMC Technologies, Inc. ("Defendant," "FMC," "the company") under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), under the Texas Labor Code, and under Texas common law. Plaintiff alleges that FMC discriminated against him, on the basis of his race, and created a hostile work environment. Plaintiff further alleges that FMC "retaliated" against him when he filed a grievance complaining that his supervisor had been speaking negatively about him and gave preferential treatment to his "favorite" employee. Pending before the court is a motion for summary judgment that was filed by Defendant. (FMC Technologies, Inc.'s Motion for Summary Judgment ["Motion"], Docket Entry #20). Plaintiff has responded in opposition to the motion, and Defendant has replied. (Plaintiff Davidson's Response to Motion for Summary Judgment ["Response"], Docket Entry #21; FMC Technologies, Inc.'s Reply in Support of Its Motion for Complete Summary Judgment ["Reply"], Docket Entry #22). Having reviewed the pleadings, the evidence, and the

applicable law, it is **RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED**.

**Background**

Defendant FMC Technologies, Inc. manufactures sophisticated oil and gas production equipment and is headquartered in Houston, Texas. (Motion at 3). On February 27, 2012, Plaintiff Craig Davidson, a 42 year old Caucasian male, was hired by FMC, as an "Assembly Technician"[1] in Houston, Texas. (*Id.*; Motion, Ex. 3 ["Davidson Offer Letter"] at 2; Response, Ex. 4 ["Davidson Affidavit"] at 1). He was originally assigned to work at the Hardy Facility, and this action arises from Davidson's complaints that he was discriminated against, because of his race,[2] while employed at that facility. (Motion at 3; Motion, Ex. 28 ["Davidson Deposition"] 104:18; Plaintiff's First Amended Complaint ["First Amended Complaint"] at 3, Docket Entry #15; Response at 1-4).

In support of his claims, he contends that he was subjected to "outrageous and offensive verbal abuse," and other "hazardous and unhealthy working conditions[.]" (First Amended Complaint at 2-3). While Davidson's precise complaints are difficult to glean, he appears to allege that FMC "retaliated" against him for filing a grievance against his supervisor, Brandon Escobedo. (*See id.* at 3; Motion, Ex. 16 at 8; Motion, Ex. 17 at 2). Davidson also alleges that the termination of his employment with FMC was a result of this discrimination, as well as in retaliation for his complaints about Escobedo. (First Amended Complaint at 3). In addition, Plaintiff raises common

---

[1]At all times relevant to this lawsuit, Davidson was an "at-will" employee. (Motion at 4; Davidson Offer Letter at 2; Motion, Ex. 4 ["Application for Employment"] at 6).

[2]In pleading his Title VII discrimination claim, Plaintiff does not claim membership in any statutorily protected class. (*See* First Amended Complaint at 3). However, in his EEOC charge, Davidson indicated that FMC discriminated against him on the basis of his race. (Response, Ex. 6 at 2). Construing Plaintiff's pleadings in a liberal manner, this court presumes, without deciding, that Plaintiff intended to allege a claim for race discrimination under Title VII.

law claims for invasion of privacy, negligence, defamation, and tortious interference with contractual and business relationships. (*Id*. at 2-4). Davidson's invasion of privacy claim stems from the purported circulation of a "confidential journal describing his frustration[] with [] co-workers[.]" (Response at 5, First Amended Complaint at 2, 3). His negligence claim arises from injuries that he allegedly suffered as a result of Defendant's failure "to implement and maintain proper hearing and visual protection devices[.]" (First Amended Complaint at 4). Next, Davidson complains that Defendant "defamed" him by "uttering [] false [] statements about his personal [] and professional reputation[.]" (*Id*. at 3). Finally, Plaintiff contends that FMC "tortiously interfered with [his] contractual and business relationships [.]" (*Id*. at 4).

The record shows that, from 2012 to 2014, Plaintiff was working at the Hardy Facility, and that he reported directly to Brandon Escobedo ["Escobedo"]. (Motion at 3; Davidson Offer Letter at 2; Davidson Deposition at 104:18; Motion, Ex. 16 at 4; Response, Ex. 5 ["Performance & Development Discussion 2014"] at 4). On January 15, 2013, he was evaluated in a "Performance & Development Discussion,"["PDD"] to determine whether he had "accomplish[ed] [certain] performance objectives[, and maintained his] major responsibilities [] during the [specified] appraisal period." (Motion, Ex. 16 at 2). In that PDD, Davidson was assessed in the categories of "Safety," "Quality," "Cost," "Delivery," and "Improved Work Force." He received commendations in each of those areas. (*Id*. at 2-3). In fact, Davidson was recognized for his reliability, initiative, "solutions-oriented" mindset, "accountability for project deliverables," and his ability to motivate and lead his co-workers. (*Id*. at 3). It was also noted that Plaintiff "promote[d] a positive work environment[,]" by training other technicians and by "being a constant resource for technicians [with] questions." (*Id*. at 3). However, the PDD also recommended that Davidson "gain a better

understanding of [how his] personality [] interact[s]" with "his co-workers['] personalities[.]" (*Id.* at 4).

Five months after that PDD, an FMC security guard found a "'book in a [company] bathroom stall [apparently] talking mess about people in the shop[.]'" (Motion at 4; Motion, Ex. 5 at 3). The guard gave the journal to Daniel Maganas ["Maganas"], an equipment preservation technician. (Motion, Ex. 5 at 2). Maganas accepted the journal, "glanced at it," but reports that he did not read it. (*Id.*). He admits, however, that he did review enough of the notebook to realize that it belonged to Davidson. Maganas gave the journal to another technician, who, in turn, left it for Davidson to pick up when he arrived at work the following day. (*Id.* at 3). Maganas states that, the next day, he heard that two other employees had seen the journal before it was ultimately given to the company's human resource department. (*Id.*).

On May 13, 2013, the human resource department notified Davidson that it had received a complaint that he had engaged in inappropriate behavior, and that an investigation would ensue. (Motion, Ex. 9 at 2). In a letter, dated May 16, 2013, Delicia Perdue ["Perdue"], an employee relations specialist, informed Plaintiff of the results of that investigation. (*See id.*). Perdue reported that a claim that Davidson "often refer[s] to [his co-workers] as 'idiot[s],' [] or 'dumb'" had been substantiated, and that such behavior is "disrespectful and inappropriate." (*Id.*). She also stated that an allegation that Plaintiff had "mentioned planting a flash grenade [] on company property" had been confirmed, and that "threatening the security" of company employees and company property is a "violation of company policy." (*Id.*). Perdue warned Davidson that additional displays of inappropriate behavior, or violations of company policy, would result in further disciplinary action, "up to and including termination." (*Id.*).

4

On December 18, 2013, Davidson applied for the position of Production Control Planner II at FMC. (Motion at 4; Davidson Deposition at 143: 11-15). Lillian DeLeon ["DeLeon"], Production Planning Supervisor, interviewed Plaintiff about that job opening. (Motion, Ex. 10 ["Ethics Point Case 693"] at 5). During the interview, DeLeon apparently asked Davidson about a rumor that he had criticized his supervisor. (Motion, Ex. 11 ["DeLeon Transcript"] 2:21-25, 3:1-6). It was reported that Plaintiff had earlier complained to Jeffrey Mathews ["Mathews"], the company's Director of Service, that he thought that Brandon Escobedo was a bad supervisor. (*Id*.). Davidson denied making such a statement, and later, sent an email to Mathews, repeating that he had never commented on Escobedo's abilities. (Ethics Point Case 693 at 5; Motion, Ex. 12 ["Mathews Emails"] at 2; DeLeon Transcript at 2:21-22). On January 7, 2014, Davidson again met with DeLeon in an effort to dispel the rumor that she had referenced during his job interview. (Ethics Point Case 693 at 5; DeLeon Transcript at 3:3, 5:8-9). Plaintiff told her that he felt that it would be "unfair" if the rumor was to be considered in the application process. (DeLeon Transcript at 3:17-19). DeLeon assured Davidson that the rumor was not the determining factor in her decision to award the position to another candidate. (*Id*. at 3:20-21). Davidson conceded that he understood the decision to hire "someone with 20 years" of experience instead of him. (*Id*. at 3:20-4:1). DeLeon encouraged Davidson to speak with Escobedo, directly, to see if he knew who had started the rumor, and to attempt to "mend [the] relationship." (*Id*. at 6:23-7:3).

After the meeting with DeLeon, Plaintiff did speak with Escobedo, who told him that he "had no idea" how the rumor had originated. (Motion, Ex. 13 ("Escobedo Transcript") at 2:23). Escobedo did comment that he had been speaking with other supervisors about the possibility of transferring Plaintiff to another department, but that he wanted to ensure that any new position was "a good fit,"

before making a decision. (*Id*. at 6:20-7:24). Escobedo said that he wanted to determine whether Davidson could work with the employees in a new department, because "most people don't or can't work with [him.]" (*Id*. at 7:24, 8:16). Plaintiff said that he had been told that there were "15 complaints from people that [didn't] want to work with me." (*Id*. at 10:14-15). Escobedo also mentioned reports that, following FMC's November, 2013 Job Expo, Davidson had spoken with Tim Booth ["Booth"], the Asset Services Manager, about obtaining a different position in the company. (*Id*. at 5:12-16, 18:4-10; Motion, Ex. 6 ["Perdue Declaration"] at 2). Plaintiff told Escobedo that Booth had requested that he schedule a meeting to discuss different job opportunities, and that he had, in fact, met with Booth about that possibility. (*Id*. at 18:12-15). At the end of their meeting, Escobedo promised Plaintiff that he would help him gather more information about the source of the offending rumor, as well as the fifteen complaints from his co-workers. (*Id*. at 19:3-22, 20:4-5).

On January 7, 2014, Plaintiff filed a formal complaint against Escobedo, notwithstanding his supervisor's promise to help restore his reputation. (Ethics Point Case 693 at 2-6). In that complaint, Plaintiff alleged that Escobedo had been showing favoritism toward other employees, while "slandering" Davidson's reputation within the company. (*Id*.). Plaintiff claimed that Straughn Frier ["Frier"], Escobedo's "favorite employee," had been "ste[a]ling time[,]" but that Escobedo had not disciplined Frier for doing so. (*Id*. at 5). Plaintiff also claimed that Escobedo spoke negatively about him, and that he "ha[d] not been able to advance within the company, due to [his] [] accusations." (*Id*. at 3). Davidson specifically mentioned the rumor concerning his statements about Escobedo's management skills. (*Id*. at 5). He added that he feared retaliation by Escobedo for filing the complaint. (*Id*. at 3). Plaintiff also admitted that he had spoken to Brian Sangster, a company

manager, to Lillian DeLeon, and to Escobedo, directly, regarding the rumor. He then revealed that he had recorded each of those conversations without the other party's knowledge. (*Id*. at 4).

On January 9, 2014, Samantha Alfafara ["Alfafara"], Human Resources Business Partner at FMC, filed a formal complaint against Davidson, alleging that he had been disrupting the workplace with his attempts to dispel the Escobedo rumor. (Motion, Ex. 14 ["Ethics Point Case 694"] at 2-5). Alfafara complained that Plaintiff was showing co-workers the Mathews emails to prove that he never made disparaging remarks about Escobedo. (*Id*. at 3). Alfafara pointed out that Davidson had been showing these emails to hiring managers in the hope that doing so would improve his chances of getting a new position. (*Id*. at 4). In an email to Escobedo, Lillian DeLeon also expressed concerns regarding Plaintiff's attempts to quell the rumor, stating that his conduct was "very disruptive." (*Id*. at 3).

On January 21, 2014, Plaintiff was given a "Level I Written Warning,"[3] for his actions in attempting to establish that the Escobedo matter was a false rumor. (Motion, Ex. 15 at 2). He was reprimanded for disrupting the workplace by sharing the Mathews emails, and for recording conversations with FMC managers without their consent. (*Id*.). Davidson was instructed to refrain from future disruptive conduct, and to cease recording conversations on company property. (*Id*.). If Plaintiff failed to comply with these directives, he would be subject to additional disciplinary sanctions, "up to and including termination." (*Id*.).

On March 31, 2014, Davidson was evaluated in another "Performance & Development Discussion." (Response, Ex. 5). In the categories of "Safety and Sustainability," "Innovation," and

---

[3]Under FMC's Human Resource's Policies and Procedures on Employee Conduct and Corrective Action, an employee may be given a written warning for "Level I offenses. . .which require correction in the interest of maintaining a productive and well-managed work force." (Motion, Ex. 23 ["HRPP"] at 2, 3). Level I offenses include "disruptive behavior" and "violation[s] of Company Policy." (*Id*. at 4).

"Quality," he was found to be "outstanding" and to "exceed [the company's] requirements." (*Id*. at 1-2). In the categories of "Integrity" and "Customer Centered[ness,]" he was found to "meet [the company's] requirements." However, in the categories of "Collaboration," and "Valuing People," it was determined that he "need[ed] improvement[.]" (*Id*. at 2). Escobedo did acknowledge Davidson for his ability to take on leadership roles that facilitated the education of other technicians. (*Id*. at 3). Nonetheless, he noted that Plaintiff "struggle[d] working in a team environment[,]" and that "there seemed to be conflict between [Plaintiff] and other team members at different times." (*Id*.). He added that Davidson often spoke as though he were "better or above the other technicians . . . which [was] not conducive to proper collaboration or valuing people." (*Id*.). Plaintiff "strongly disagreed" with Escobedo's assessment, claiming that his poor evaluation was in "retaliation" for the grievance that he had filed against Escobedo in January, 2014. (*Id*. at 4).

On December 11, 2014, Plaintiff caused two "Near Miss"[4] safety incidents. (Motion, Ex. 18 ["Progressive Corrective Action Notice"] at 2). In the first incident, Davidson had apparently "improperly handl[ed] a tool," and dropped it on the workshop floor in doing so. (*Id*.; Motion, Ex. 19). Plaintiff also used his foot to stop the tool from rolling, in violation of FMC's "No-Touch Policy." (Progressive Corrective Action Notice at 2). In the second incident, Plaintiff "failed to properly center [a] load under [a] crane[, and] lost control of the load[.]" (*Id*.; Motion, Ex. 19).The load then "swung out and hit a pallet and two push carts." (Progressive Corrective Action Notice at 2, Motion, Ex. 19). The company found that Davidson failed to report the incident immediately, and that he misrepresented the facts when he did report it. (Motion at 6; Progressive Corrective Action Notice at 2; Safety Procedures Manual at 2, 8). Defendant also determined that Plaintiff's

---

[4] A "near miss" safety incident is "[a]n event which did not cause injury to a person or result in equipment or property damage[,] but under different circumstances would have resulted in a different outcome." (Motion, Ex. 20 ["Safety Procedures Manual"] at 4).

behavior could have caused damage to the company's equipment, as well as injury to his co-workers in the area. (*Id.*). As a result of Plaintiff's failure to report the incident in compliance with company policy, FMC was not fully aware of the severity of the incidents until twenty-eight days after the events. (*Id.*). On January 8, 2015, Davidson was suspended, without pay, as a result of these infractions. (*Id.* at 3). On January 17, 2015,  Plaintiff's employment with FMC was terminated. (Motion, Ex. 24 at 2).

Davidson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 28, 2015. (Response at Ex. 6). In that charge, he alleged that FMC had discriminated against him on the basis of his race and age, and that it had "retaliated" against him. (*Id.* at 1). Plaintiff, however, did not identify the retaliatory acts, or the conduct that prompted the alleged retaliation. (*See id.* at 2-3). Before this court, he contends that FMC intentionally subjected him to an abusive work environment. He claims, specifically, that employees made "malicious and belittling" statements about him, due to his race and his age. (*Id.* at 3). Plaintiff also claims that Defendant placed "arbitrary and capricious" requirements on him in order to oust him from his job. (*Id.*). Davidson alleges that he received a right to sue letter from the EEOC, however, he has neither submitted a copy of that letter, nor has he stated the date on which he received it.[5] (*See* Response at 4, *Id.*, Ex. 4 at 2). He filed an action against Defendant in state court on February 24, 2015. (Notice of Removal, Ex. 1, Plaintiff's Original Petition, ["Petition"], Docket Entry #1). In his state court petition, Davidson stated claims for hostile work environment, and wrongful termination "in violation of the laws of the State of Texas and the United States." (*Id.*). He also made common law claims for invasion of privacy, defamation, and tortious interference with contractual

---

[5]Defendant, however, has not raised lack of jurisdiction based on Plaintiff's failure to submit a right to sue letter as grounds for dismissal.

opportunities and business relationships. (*Id.* at 3). On March 23, 2015, Defendant removed this action to federal court on the basis of the court's federal question jurisdiction. (Notice of Removal at 2). On July 30, 2015, Plaintiff amended his complaint to include discrimination and retaliation claims under Title VII, as well as a claim for negligence under Texas law. (*See* First Amended Complaint). Defendant now moves for summary judgment. Having reviewed the pleadings, the evidence, and the applicable law, it is recommended that Defendant's motion for summary judgment be GRANTED.

**Standard of Review**

Summary judgment is appropriate if "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant [is] entitled to judgment as a matter of law.'" *Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 275-76 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(c); citing *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving part[ies], there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 30, 127 S.Ct. 1769, 167 L.Ed. 686 (2007) (citations omitted); *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012). Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). "The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case." *Mack v. Equable Ascent Financial, L.L.C.,*

748 F.3d 663, 665 (S.D. Tex. 2014) (citations omitted); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "'If the moving party fails to meet its initial burden, its motion for summary judgment must be denied, regardless of the non-movant['s] response.'" *Exxon Mobil Corp. v. U.S.*, Nos. H-10-2386, H-11-1814, 2015 WL 3513949, *at 15 (S.D. Tex. June 4, 2015) (quoting *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002). If the moving party has met its Rule 56 burden, the non-moving party cannot merely rest on the allegations in his pleadings. *See Lincoln*, 401 F.3d at 349-50; *see also Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001). Rather, he is required to "'go beyond the pleadings'" and produce probative evidence to show "'that there is a genuine issue for trial.'" *Kee*, 247 F.3d at 210 (citations omitted); *Boudreaux*, 402 F.3d at 540; *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005). If he does so, his evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 507 (5th Cir. 2003); *see Hillman,* 697 F.3d at 302. However, if the non-movant fails to respond appropriately, or if he fails to respond at all, summary judgment is not awarded to the moving party simply by default. *See Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *see also Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014). Instead, as always, summary judgment is appropriate only if the moving party has demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *Day,* 768 F.3d at 435.

**Discussion**

As a threshold matter, a brief review of the claims Davidson is pursuing in this court is necessary. In his first amended complaint, Plaintiff seeks recovery for claims of race discrimination,

hostile work environment, retaliation, and wrongful termination under Title VII and under the Texas Labor Code. (First Amended Complaint at 2-4). In addition, he alleges violations of state law for invasion of privacy, negligence, defamation, and tortious interference with contractual and business relationships. (*Id.*). Recently, however, Plaintiff seems to have raised new claims of discrimination on the basis of his age, in violation of the Age Discrimination in Employment Act ["ADEA"]. (Response at 1). But Davidson did not plead this theory of recovery in his first amended complaint, and has raised it only in his response to Defendant's motion for summary judgment.[6] In doing so, he is attempting to amend his complaint without ever requesting leave to do so. *Lyons v. North East Independent School District*, No. SA-07-CA-330-OG, 2007 WL 5186146, at *4 (W.D. Tex. Oct. 19, 2007) (citing *Parish v. Frazier*, 195 F.3d 761, 763-64 (5th Cir. 1999). Although "'leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case.'" *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (quoting *Shivangi v. Dean Witter Reynolds, Inc*., 825 F.2d 885, 890 (5th Cir. 1987). The Fifth Circuit has emphasized that a pending summary judgment motion tends to favor denying a plaintiff's subsequent request to amend his pleadings. *Id.* Indeed, "[m]uch of the value of summary judgment procedure would be [lost] if a party were free to rely on one theory. . . to defeat [] [a summary judgment] motion . . . and then, . . . come back . . . and fight on the basis of some other theory." *Id.* at 846 n. 2. Here, Davidson's summary judgment response contains allegations that would establish an entirely new

---

[6]Plaintiff did allege age based discrimination in his EEOC charge. (*See* Response, Ex. 6 at 3). However, courts in this circuit have held that the EEOC charge merely provides the factual basis for legal claims which must be properly plead in federal court. *See Maheshwari v. University of Texas-Pan America*, 460 F.Supp.2d 808, 812 (S.D. Tex. 2006) (plaintiff's general reference to claims raised in EEOC charge in "Conditions Precedent" section of amended petition determined to be insufficient to affirmatively state a federal cause of action); *see also Lyles v. Citicorp Credit Servs., Ltd.,* No. 3:97-CV-0599-G, 1997 WL 810027 at *2 (N.D. Tex. 1997) (filing charge with EEOC merely showed that plaintiff's factual allegations could give rise to claims under Title VII, but it was not sufficient to invoke federal question jurisdiction when plaintiff had not asserted a federal cause of action in her petition).

basis for a discrimination claim. He has offered no explanation for a failure to include that cause of action in his initial pleadings, or for his failure to timely amend his complaint. On this record, Davidson's age discrimination claim is not properly before the court, and need not be addressed. U.S. *ex rel. Gudur v. Deloitte Consulting LLP*, 512 F.Supp.2d 920, 956 (S.D. Tex. 2007) (holding that plaintiff may not rely on new claim, raised in response to defendant's motion for summary judgment, to defeat that motion).

On March 1, 2016, FMC filed its motion for summary judgment. In support of that motion, the company argues, first, that all of Plaintiff's Title VII claims, as well as his state law claim for defamation, fail as a matter of law, because they were not timely filed. (Motion at 8-13, 14, 18-19). Further, as to Plaintiff's hostile work environment allegation, the company argues that Davidson cannot show that he was subjected to "severe" or "pervasive," race based harassment. (*Id*. at 10-13). With regard to the retaliation claim, Defendant argues that Davidson did not engage in any "statutorily-protected activity," by filing a workplace grievance against Escobedo, complaining about slander to his reputation. (*Id*. at 14-15). In the alternative, Defendant argues that it had a legitimate business reason for terminating Plaintiff, and that he cannot show that that reason was a pretext for discrimination. (*Id*. at 15-16). Plaintiff's negligence claim fails, according to the company, because it is barred by the exclusive-remedy provisions of the Texas Workers' Compensation Act. (*Id*. at 17). FMC also contends that Plaintiff has not provided any factual support for his claim of tortious interference with contractual and business relationships. (*Id*. at 18). Finally, Defendant insists that Davidson's allegations do not support an invasion of privacy claim, because it did not publicize private facts about him to the public at large. FMC further argues that, even had it published Plaintiff's journal, its publication would not have been highly offensive to him. (*Id*. at

21).

### Claims Under Title VII and TCHRA

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). The Texas Commission on Human Rights Act ("TCHRA") was enacted to correlate "state law with federal law in the area of discrimination in employment." TEX. LAB. CODE ANN. § 21.001(3) (West. 2006); *Brown v. Board of Trustees Sealy Independent School District*, 871 F.Supp.2d 581, 595 (S.D. Tex. 2012). The TCHRA explicitly refers to Title VII, providing that one purpose of the law is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB. CODE ANN. § 21.001. Because of the similarity in these statutes, courts apply the legal standards developed by federal courts, in Title VII cases, to resolve both TCHRA and Title VII claims. *Lohn v. Morgan Stanley DW, Inc.* 652 F. Supp. 2d 812, 823 (S.D. Tex. 2009).

Plaintiff claims that Defendant discriminated against him, and subjected him to harassment, because he is Caucasian, in violation of Title VII and "comparable provisions of the Texas Labor Code." (First Amended Complaint at 3; Response at 1-2). Davidson contends that he was treated differently from non-white employees; and that FMC fabricated a performance improvement plan meant to demean him; created inaccurate "write ups" about his job performance; and continuously subjected him to "abusive working conditions." (Response, Ex. 4 at 4). He also claims that Escobedo called him a "nigger-lover," at some time after November, 2013, and before January 7, 2014. (Motion at 9; Davidson Depo. at 98:5, 12). Plaintiff further alleges that FMC retaliated against him

14

for filing a grievance against his supervisor, in violation of "federal [] and [] state employment law." (First Amended Complaint at 4; Ethics Point Case 693 at 5, Response, Ex. 5 at 4). Defendant, however, argues that those claims, even if otherwise valid, are barred, because they were not filed with the Equal Opportunity Employment Commission ["EEOC"] within the time limits set out in the appropriate regulations. (Motion at 9-10).).

### Timely Filing of EEOC Complaint

Before bringing a suit in federal court, a plaintiff in an employment discrimination case must "file[] a timely charge with the EEOC[,] and receive[] a statutory notice of right to sue." *Taylor v. Books a Million, Inc*. 296 F.3d 376, 378-79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir.1996)). A charge is deemed "timely," if it is filed with the EEOC within 180 days of the unlawful conduct. 42 U.S.C.A. § 2000e-5(e)(1); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Taylor*, 296 F.3d at 379 (quoting *Dao*, 96 F.3d at 789). Because Texas has its own state agency to resolve civil rights complaints, it is a "deferral state," so that Title VII extends the applicable filing period for a discrimination claim to 300 days.[7] 42 U.S.C.A. § 2000e-5(e)(1); *Blasingame v. Eli Lilly and Co.*, No. H-11-4522, 2013 WL 5707324, at *4 (S.D. Tex. 2010) (citing *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998)). And, under a work-sharing agreement between the EEOC and the Civil Rights Division of the Texas Workforce Commission, when the EEOC receives a charge of discrimination, "the [TWC], for all legal and practical purposes, [also] receive[s] the charge]." *Brooks v. Firestone Polymers, LLC*, No. 1:12-cv-325, 2014 WL 4792653, at *10 (E.D. Tex. 2014)

---

[7]Further, if, as here, a plaintiff brings harassment and hostile work environment claims, the claims "will not be time barred [if] all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279-80 (5th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

(citing *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994)). Although timely filing of an EEOC complaint is not a jurisdictional prerequisite, it is required before one can file suit in district court.[8] *Haskett v. Continental Land Resources, LLC*, No. G-14-0281, 2015 WL 1419731, at *8 (S.D. Tex. 2015) (citing *Taylor*, 296 F.3d at 378-79).

In this instance, Davidson filed his EEOC complaint on May 28, 2015, and so  the date for determining the timeliness of his Title VII claims is 300 days before that, or August 1, 2014. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (citing *Celestine v. Petroleos de Venezuella, S.A.*, 266 F.3d 343, 351 (5th Cir. 2001); (Response, Ex. 6). Any alleged adverse employment action taken before that date is therefore time-barred. *Id.* Here, Davidson's pleadings largely consist of general allegations of "discrimination[,]" "abusive, hazardous[,] and unhealthy working conditions[,]" and "retaliation[,]" which fail to recite any precise examples of discriminatory conduct. (*See* First Amended Complaint at 2-3). However, at his deposition, Davidson testified that Escobedo referred to him as a "nigger-lover," at some date after he had met with Tim Booth following the Job Fair in November, 2013. (Depo. at 98:5, 12, 101:19-20, 104:2-6; Motion at 10). There is no evidence to show that Plaintiff spoke with Booth at any time other than that meeting in 2013. Nor has he presented any evidence of when the allegedly "abusive, hazardous[,] and unhealthy working conditions" occurred. On this record then, Escobedo's reported comment provides the only basis for Davidson's harassment claim, and it must be assumed that it took place after  November, 2013, and before January 7, 2014. That is clearly outside the August 1, 2014 deadline for a timely EEOC complaint. For that reason alone, it is recommended that Davidson's hostile work environment claim

---

[8] Although the Supreme Court has held that EEOC filing deadlines are not jurisdictional, the Fifth Circuit has found that the exhaustion requirement is jurisdictional, and, is not subject to waiver or estoppel. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982); *Filer v. Donley*, 690 F.3d 643, 646-47 (5th Cir. 2012).

be dismissed, as it was not timely filed with the EEOC. *See* 42 U.S.C.A. § 2000e-5(e)(1); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 476-77 (5th Cir. 1991) ("[i]f an EEOC charge is untimely filed, a suit based upon the untimely charge should be dismissed[]").

Further, even had Plaintiff filed his EEOC complaint on time, the evidence before the court, without more, is insufficient to support a claim for a hostile work environment. It is well established that Title VII is not a "general civility code[,] and conduct that is "merely offensive" is not actionable. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778, 118 S.Ct.2275, 141 L.Ed.2d 662 (1998); *Hockman v. Westward Commun's, LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004). In determining whether a work environment is objectively hostile or abusive, courts look to the totality of the circumstances, and examine: "1) the frequency of the discriminatory conduct; 2) its severity; 3) whether it is physically threatening or humiliating[,] as opposed to a mere offensive utterance; 4) whether it unreasonably interferes with an employee's work performance; and 5) whether the complained-of conduct undermines the plaintiff's workplace competence." *Hockman*, 407 F.3d at 325-26. Harassment is only actionable under Title VII if it is "so 'severe or pervasive' as to 'alter the conditions of employment and create an abusive working environment.'" *Stanley v. University of Tex. Medical Branch, Galveston, TX*, 425 F.Supp.2d 816, 823 (S.D. Tex. 2003) (quoting *Faragher*, 524 U.S. at 786). Here, Plaintiff's hostile work environment claim is based solely on Escobedo's reported one-time use of the term "nigger-lover." Although isolated incidents, if egregious, can alter the terms and conditions of employment, Davidson has not established that his supervisor's conduct was so "severe" or "pervasive" that it created a work environment that was sufficiently hostile to warrant Title VII liability. *Stanley,* 425 F.Supp.2d at 824 (finding that "one isolated" use of a racial slur is not "sufficiently severe and pervasive" to create an objectively hostile

work environment.).

### Retaliation Claim

Davidson also claims that, on March 31, 2014, he was given an unfavorable assessment on a "Performance & Development Discussion" ["PDD"], in retaliation for filing a grievance in which he complained that Escobedo had slandered him. (*See* Response, Ex. 5 at 4). FMC insists, at the outset, that Davidson's retaliation claim is barred, because he did not file his EEOC complaint within the Title VII limitations period. (Motion at 13-14). Because the PDD was completed before August 1, 2014, Davidson's EEOC charge, filed May 28, 2015, was not timely, and the retaliation claim should be dismissed. *Frank*, 347 F.3d at 136; *Courtade v. Harrah's Operating Co., Inc*., 2011 WL 121939, at *3 (E.D. La. Jan. 10, 2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (dismissing plaintiff's retaliation claim because charge not filed within 300 day limitations period).

Defendant also points out, correctly, that even had Plaintiff's EEOC complaint been timely filed, his retaliation claim fails on the merits, nonetheless. (Motion at 14-17). To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show: "1) that [] he engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action. *Davis v. Fort Bend County*, 765 F.3d 480, 489 (5th Cir. 2014) (citing *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ*., 579 F.3d 546, 551 (5th Cir. 2009) (citations and internal quotation marks omitted). If Davidson successfully establishes his *prima facie* case, the burden then shifts back to FMC to state a legitimate, non-retaliatory reason for its action. *Septimus v. Univ. of Hous*., 399 F.3d 601, 607-08 (5th Cir. 2005). If Defendant meets this requirement, any presumption of retaliation dissipates, and Davidson must show that Defendant's

stated reason is actually a pretext for retaliation. *Id.*

Here, Plaintiff's retaliation claim is predicated on his belief that filing a grievance complaining about slander is a statutorily-protected activity under Title VII. (*See* Davidson Deposition 46:5-23; 50:4-16). However, a plaintiff in an employment discrimination case must identify the reason that conduct is unlawful, *under Title VII*, for the activity to be considered protected. *Tratree v. BP N. Am. Pipelines, Inc*., 277 Fed. App'x 390, 395 (5th Cir. 2008) (emphasis added). "'To satisfy the protected activity requirement, an employee must oppose conduct made unlawful by Title VII; complaining of unfair or undesirable treatment not addressed by Title VII will not suffice.'" *Houston v. Texas Southern Univ*., No. H-08-3163, 2011 WL 31796, at *5 (S.D. Tex. Jan. 5, 2011) (quoting *Richard v. Cingular Wireless LLC*, 233 F.App'x 344, 337-38 (5th Cir. 2007) (per curiam); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed.App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim, because plaintiff failed to complain of racial or sexual harassment). As Defendant points out, Davidson never complained of any harassment on the basis of race, sex, or any other protected category. He has complained only about Escobedo's alleged "slander" of his professional reputation, and his "favoritism" toward other employees. (Motion at 15, Ethics Point Case 693). Because Plaintiff has alleged nothing about race, color, sex, religion, or national origin, he has not raised a fact issue on the question of whether he engaged in a protected activity under Title VII. *Hough v. Tex. Dep't. of Health and Human Servs*., 2012 WL 3756536, at *2 (S.D. Tex. Aug. 28, 2012) (plaintiff whose grievance did not mention discriminatory practices, and addressed only "demeanor with inspectors," determined not to be protected activity).

It is important to note, as well, that Defendant has articulated a legitimate, non-retaliatory reason for terminating Plaintiff's employment. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n. 3, 124 S.Ct. 513, 157 L.Ed. 2d 357 (2003). On December 11, 2014, Davidson caused two "near miss" safety incidents, and then failed to report them, in violation of FMC's policies. (Motion at 15;

Progressive Corrective Action Notice at 2). Defendant has shown that Davidson was terminated for that conduct. (*See* Progressive Corrective Action Notice at 2). Moreover, Plaintiff cannot show that FMC's proffered reason for terminating his employment is a pretext for discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); (Motion at 16; Davidson Deposition at 49:1-9). For these reasons, it is recommended that Plaintiff's retaliation claim be dismissed.

### Negligence Claim

In addition to his Title VII claims, Plaintiff has made a claim for negligence under Texas common law. Davidson alleges that FMC negligently administered its safety training procedures, which resulted in "unreasonable risks to [his] health and safety." (First Amended Complaint at 3). In particular, he contends that, during his employment with the company, a broken pressure release valve sprayed fluid in his eyes, and worsened a preexisting ringing in his ear. (Davidson Deposition at 198:2-200:25, 249:1-16). Defendant insists , however, that Plaintiff's negligence claims are barred by the exclusive-remedy provisions of the Texas Workers' Compensation Act. (Motion at 17).

The Texas Workers' Compensation Act ["TWCA"] exempts employers from common-law liability based on negligence or gross negligence. *Bradley v. Phillips Petroleum, Co.*, 527 F.Supp.2d 625, 641 (S.D. Tex. 2007) (citing *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981). For covered employees, the TWCA provides the exclusive remedy for injuries sustained in the course of their employment. *Petri v. Kestrel Oil & Gas Properties, L.P.*, 878 F.Supp.2d 744, 759 (S.D. Tex. 2012). However, the Act does not bar claims against an employer for intentional torts. *Bradley*, 527 F.Supp.2d at 641. For that reason, Davidson's negligence claim is barred by the TWCA unless he can establish that the injury he suffered was intentional. *Id.*

In this case, Davidson fails to refute the conclusion that his negligence claim is barred by the TWCA. FMC carried workers' compensation insurance throughout Plaintiff's employment with the

company, and he has raised no evidence to suggest that the injury he suffered was the result of any intentional conduct. (Motion, Ex. 26 at 2-3). To the extent that Davidson's claim is based on the company's alleged negligence, any recovery is precluded by the TWCA. *Arredondo v. Estrada*, 120 F.Supp.3d 637, 649 (S.D. Tex. 2015) (claim for negligent hiring, supervision, and training claims dismissed under TWCA's exclusive remedy provision, because plaintiff failed to demonstrate that acts relating to negligent employment of plaintiff were committed intentionally).

### *Claim for Tortious Interference with Contractual and Business Relationships and Opportunities*

Plaintiff also claims that Defendant "tortiously interfered with [his] contractual and business relationships []." (First Amended Complaint at 4). However, Davidson fails to point to any facts in support of such a claim. (*See id.*; Motion at 18). In fact, at his deposition, Plaintiff was unable to identify *any* contractual or business relationships with which Defendant had interfered. (Davidson Deposition at 53:5-25, 54:1-6, 250:2-9) (emphasis added). It is well established that, when deciding a motion for summary judgment, "all reasonable inferences are [drawn] in favor of the nonmoving party." However, it is also true that a plaintiff cannot "defeat summary judgment with conclusory allegations [and] unsubstantiated assertions[.]" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007); *Davis v. Ft. Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014). On this record, it is recommended that Plaintiff's claim for tortious interference with contractual and business relationships and opportunities be dismissed.

### *Defamation*

Next, Plaintiff alleges that Defendant "defamed" him, by "uttering [] false [] statements about his [] job capabilities and his professional reputation." (First Amended Complaint at 3; Response at 5-6). Defendant points out that this claim is also barred by the relevant statute of

limitations. (Motion at 18-19). Davidson's cause of action is apparently based on the rumor that he complained that Brandon Escobedo was a "bad supervisor." (Davidson Deposition at 45:2-25, 46:1-23). As noted earlier, Plaintiff testified that Lillian DeLeon informed him of this rumor during an interview on December 18, 2013. (*Id*. at 46:21-23, 143:2-16).

However, defamation is a "false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex.App–Waco 2005, no pet,)). Under Texas law, a defamation claim must be brought within one year of the offending communication. TEX. CIV. PRAC. & REM. CODE. § 16.002(a). The period of limitations begins to run from the date that the cause of action accrues. *Id.* Generally, an action for defamation accrues when the defamatory statement is "published" or "circulated." *Wheeler v. Methodist Hosp*., 95 S.W.3d 628, 636 (Tex.App.–Hou. [1st Dist.] 2002) (citing *Roe v. Walls Regional Hosp., Inc*., 21 S.W.3d 647, 651 (Tex.App.–Waco 2000, no pet.). In this context, "publication" means "to communicate to a third party capable of understanding their defamatory connotation and in such a way that the third party did so understand." *Shaunfield v. Experian Information Solutions, Inc.*, 991 F.Supp.2d 786, *799-900* (N.D. Tex. 2014); *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 394, 399 (Tex.App.–Hou. [1st Dist.] 1993, pet. denied). However, if a defamatory statement is not made public, then the "discovery rule" applies. *Wheeler*, 95 S.W.3d at 636. If the discovery rule is triggered, the cause of action does not accrue until the plaintiff discovers, or through the exercise of reasonable care and diligence, should discover the nature of the injury. *Barker v. Exkman,* 213 S.W.3d 306, 211-12 (Tex. 2006).

In this instance, Plaintiff's defamation claim is time barred. Davidson testified that DeLeon stated that she knew about the rumor, because Brandon Escobedo had mentioned it some time before December, 2013. (Davidson Deposition at 46:21-23). Although the allegedly defamatory statement

had already been "published," Plaintiff testified that he did not learn of it until the date of his interview with DeLeon. (*Id.* at 46:21-23, 143:2-16). If the discovery rule applies to defer the accrual of the claim to that day, December 18, 2013, the limitations period for a defamation claim expired one year later, on December 18, 2014. TEX. CIV. PRAC. & REM. CODE. § 16.002(a). However, Davidson did not file his original petition until February 24, 2015. (*See* Original Petition). Any defamation claim raised in that petition, based on statements made in December, 2013, is clearly time-barred. Davidson has presented no evidence of additional "defamatory statements" that were published after February 24, 2014. On this record, it is recommended that Davidson's defamation claim be dismissed. *Jackson v. Tex. A&M Univ.* Sys., 975 F.Supp. 943, 945 (S.D. Tex. 1996) (holding that Texas limitations period for slander begins to run when injured person learns of defamation); *Henderson v. AT&T Corp.*, 933 F.Supp. 1326, 1331 (S.D. Tex. 1996) (dismissing plaintiff's defamation claims when they were filed more than one year after defamatory statements were made).

### *Invasion of Privacy Claim*

In his final claim, Plaintiff complains that Defendant, "inva[ded] [] his privacy concerning his personal documents and effects[,]" by "disclos[ing] and circulat[ing] [] his journal among [FMC employees,]" without his consent. (First Amended Complaint at 3; Response at 3). To prevail on this claim, Plaintiff must establish that "(1) publicity was given to matters concerning his private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern." *Lowe v. Hearst Communication, Inc.,* 487 F.3d 246, 250 (5th Cir. 2007). Defendant is adamant, however, that Davidson's allegations do not support a claim for invasion of privacy. (Motion at 19-21).

First, FMC contends that it did not publicize private facts about Davidson to the "public at large." (Motion at 20). "'Publicity' requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public knowledge." *Graham v. JPMorgan Case Bank, Nat. Ass'n*, No. 4:13-CV-1410, 2015 WL 4431199, at * 12 (July 15, 2015) (quoting *Industrial Foundation of the South v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 683-84 (Tex. 1976)). This requirement differs from the definition of "publicity" in the defamation context, in that publication to one other person only is sufficient to constitute defamation. *Baggett v. Burnet Consolidated School District, et al.*, No. A-06-CA-572 LY, 2008 WL 80251, at *5 (W.D. Tex. Jan. 7, 2008) (citing *Industrial Foundation*, 540 S.W.2d at 683). Here, Plaintiff testified that his journal was viewed by "several people[,]" and that it was eventually "passed all around the shop." (Davidson Deposition at 119:12, 14). When pressed at his deposition, Davidson speculated that the notebook was seen by "more than ten"people. (*Id*. at 117:18). However, disclosure to a handful of individuals does not constitute publicity, because such disclosures were not made to the public at large. *Garcia v. City of Laredo, Texas,* 2011 WL 9559236, at *8 (S.D. Tex. Sept. 1, 2011) (finding that disclosure of private information to three individuals, Department of Homeland Security, Civil Service Commission, Grievance Committee, Texas Workforce Commission, and prospective employers did not constitute publicity to "public at large"). Further, even had all of the FMC employees read Davidson's journal, it would not have been "communicated to the public at large." *See Industrial Foundation*, 540 S.W.2d at 683. Because Plaintiff has not presented any competent summary judgment evidence to show that the content of his journal became "well-known in the community[,]" it is recommended that the invasion of privacy claim be dismissed. *Baggett*, 2008 WL 80251, at *4-5 (holding that presenting controversial

letter to co-defendants, grand jury, and Burnet County District Attorney's office did not constitute publication for purpose of invasion of privacy by disclosure of private facts claim).[9]

In sum, each of Plaintiff's Title VII and TCHRA claims are barred, because he failed to file his EEOC complaint within the appropriate limitations period. But even had Plaintiff timely filed his EEOC complaint, his hostile work environment claim would fail, because he has not shown that he was subjected to "severe" and "pervasive" discrimination.  Likewise, his retaliation claim would fail, because he was not disciplined for engaging in a statutorily protected activity. Davidson's negligence claim is barred by the exclusive remedy provisions of the Texas Workers' Compensation Act. Plaintiff's action for tortious interference with contractual and business relationships should be dismissed, because he has failed to provide any factual support for that claim. Plaintiff's defamation claim is barred, because it was filed beyond the statute of limitations. Plaintiff's claim for invasion

of privacy fails, because Defendant did not publicize private facts of a highly offensive nature about Plaintiff. For these reasons, it is recommended that Defendant's motion for summary judgment be granted in its entirety, and that this case be dismissed.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment be

---

[9]Defendant argues further that even had Davidson's journal been published, that would not have been "highly offensive to a reasonable person." (Motion at 21). For a valid invasion of privacy claim, the published information must "contain highly intimate or embarrassing facts about a person's private affairs, such that its publication would be highly objectionable to a person of ordinary sensibilities." *Industrial Foundation*, 540 S.W.2d at 683. In this case, Davidson's journal contained his "personal thoughts." (Davidson Deposition at 119:23-120:5). Although Plaintiff's journal may be extremely important to him, under Texas law, disclosure of its content would not be "highly offensive" to a reasonable person. *Industrial Foundation*, 540 S.W.2d at 682 (citing examples of "highly offensive" information including claims for injuries arising from sexual assault; claims brought on behalf of illegitimate children; claims for expenses of pregnancy resulting from failed contraception; claims for psychiatric treatment of mental disorders; claims for injuries to sexual organs; and claims for injuries stemming from attempted suicides).

**GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010,  Houston, Texas 77028; copies of any such objections shall be delivered to the chambers of Judge Vanessa Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 7th day of July, 2016.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**

26